AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.  3:17-mj-469
CERTAIN INFORMATION CONCERNING CELLULAR )
TELEPHONE 909-242-1637 )
)

**3:17-mj-470 - Corrected Case**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 | conspiracy to distribute controlled substances |
| 21 USC s. 841(a)(1) | possession with intent to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit of Steve Lucas

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Dennis Eng, FBI of the ~~DEA~~ DCE
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/8/17

_____
*Judge's signature*

City and state: Dayton, Ohio       Michael Newman, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 909-242-1637 | Case No. 3:17-mj-470  **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Dennis Eng (hereinafter "Affiant") being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 909-242-1637, with an unknown subscriber (the "**Target Cell Phone**"), whose service provider is MetroPCS/T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since July 19, 1998. I have been involved in narcotics related arrests; the execution of search warrants, which resulted in the seizure of narcotics; and supervised the activities of informants who provided information and assistance resulting in drug buys. Since 1998, I received training and experience in interviewing and interrogation techniques; arrest, search and seizure procedures; narcotics investigations; and various other criminal investigations resulting in successful prosecution. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of

1

drug proceeds, and the organization of drug conspiracies. In the course of conducting narcotics investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting undercover operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized wire and oral interception electronic surveillance; and preparing and executing search warrants which have led to substantial seizures of narcotics, firearms, contraband, and evidence of criminal activity.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. Section(s) 841(a)(1) and 846 have been committed, are being committed, and will be committed by an individual utilizing **Target Cell Phone** and others unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5. The FBI has developed information in regards to an international money laundering organization based in Mexico with ties to Dayton, Ohio.

6. More precisely, during late September/early October 2017, FBI Dayton received information from FBI San Diego concerning a planned drug money pickup in Dayton, Ohio. According to the information from FBI San Diego, which FBI San Diego deemed to have come from a reliable source, drug dealers in Mexico were arranging for a customer in Dayton, Ohio to deliver drug proceeds to a courier/money launderer in this area.

7. Based on this information, FBI arranged for an undercover officer ("UC") to pose as a purported money launderer/illegal money courier. On or about October 2, 2017, an unknown person purporting to be in Dayton, Ohio used 323-517-5971 to contact the UC. During this communication, the user of the 323-517-5971 indicated that he was ready to meet the UC on October 3, 2017. Given the information from FBI San Diego as well as my familiarity with efforts to launder drug proceeds, I believe that the user of the 323-517-5971 was advising the UC that he, the user of the 323-517-5971, was ready to deliver drug money for transport to Mexico.

8. Consistent with this conclusion, I know that, based on toll records, that the 323-517-5971 has been in contact with several numbers from Mexico. Based on information that I received from the DEA, I know that one of these Mexican numbers is associated with a source of drug supply in Mexico.

9. A court order, authorized by U.S. Magistrate Judge Michael Newman, Southern District of Ohio on October 2, 2017, was obtained for location information associated with cellular telephone number 323-517-5971. The location information showed that cellular telephone frequenting 126 Westwood Avenue, Dayton, Ohio. Your Affiant knows 126 Westwood Avenue, Dayton, Ohio is owned by Joe Wright, a known drug trafficker in the Dayton, Ohio area. Wright, in fact, has a prior federal conviction for drug trafficking activity. Task force members subsequently arranged for the UC money pick up to occur on October 3,

3

2017. During the undercover operation, Joe Wright arrived to meet the UC officer at the pre-determined location. Wright ultimately requested that the UC follow him back to a residence in the Dayton area to obtain the money. Given potential safety concerns, the UC declined to proceed to the house and indicated they would make alternate arrangements to pick up the money.

10. On or about October 6, 2017, FBI San Diego received reliable information indicating that a Hispanic male using the **Target Cell Phone** had conducted the money pick up from Joe Wright in place of the UC here in Dayton. Additionally, a different UC in San Diego contacted the user of the **Target Cell Phone** that same day. During the conversation, the user of the **Target Telephone** agreed to meet in the Dayton, Ohio area to deliver the money to a third party. Based on my training and experience, these conversations were consistent with efforts to move drug money back to Mexico.

11. Based on the conversations during the contacts between the UC user of **the Target Cell Phone**, investigators believe that the UM utilizing **Target Cell Phone** is involved in drug trafficking and will be delivery an amount of drug proceeds to the UC.

12. Your Affiant knows that collecting location information on the **Target Cell Phone** for a 30 day period will assist investigators in identifying the user of the **Target Cell Phone** as well as other members of the drug trafficking organization. In addition, the location information will continue to assist in identifying additional locations where the UM stores, processes, packages, and sells narcotics.

13. In my training and experience, I have learned that MetroPCS/T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at

4

least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

14. Based on my training and experience, I know that MetroPCS/T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, by initiating a signal to determine the location of the Target Cell Phone on MetroPCS/T-Mobile's network or with such other reference points as may be reasonably available.

15. Based on my training and experience, I know that MetroPCS/T-Mobile can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

16. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

17. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until

5

30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

18. I further request that the Court direct MetroPCS/T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of MetroPCS/T-Mobile. I also request that the Court direct MetroPCS/T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with MetroPCS/T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on MetroPCS/T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate MetroPCS/T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

19. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

20. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Dennis Eng
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 8th day of October, 2017

HONORABLE MICHAEL NEWMAN
UNITED STATES MAGISTRATE JUDGE

7

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number, 909-242-1637 with an unknown subscriber, (the "Target Cell Phone"), whose wireless service provider is MetroPCS/T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of MetroPCS/T-Mobile including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of MetroPCS/T-Mobile, MetroPCS/T-Mobile is required to disclose the Location Information to the government. In addition, MetroPCS/T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with MetroPCS/T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on MetroPCS/T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate MetroPCS/T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. *See* 18 U.S.C. § 3103a(b)(2).